Robert T. HOLLINGSWORTH, M.D., Plaintiff-Appellant,

v.

Richard S. SCHWEIKER, Secretary of Health and Human Services, et al., Defendants-Appellees.

No. 80–3741.

United States Court of Appeals, Fifth Circuit.

Dec. 23, 1981.
Rehearings Denied Feb. 9, 1982.

P. J. Townsend, Jr., Tommy McWilliams, Indianola, Miss., Robert Lawson Holladay, Drew, Miss., for plaintiff-appellant.

Wales, Buck & Irving, Tyree Irving, Johnnie E. Walls, Greenville, Miss., for Zion Grove Nursing.

H. M. Ray, U. S. Atty., Thomas W. Dawson, Asst. U. S. Atty., Oxford, Miss., Mark A. Guza, Gen. Counsel, Dept. of Health & Human Services, Atlanta, Ga., for defendants-appellees.

Before CLARK, Chief Judge, GOLD-BERG and WILLIAMS, Circuit Judges.

CLARK, Chief Judge:

In *Hollingsworth v. Harris*, 608 F.2d 1026 (5th Cir. 1979) (per curiam), this case was remanded to the district court to determine whether the Secretary of Health and Human Services (HHS) had followed his own regulations in deciding to reimburse Zion Grove Nursing Center for its capital expenditures. The district court determined that the Secretary had followed his regulations and Dr. Robert T. Hollingsworth, the owner of Mediplex, a competing institution, now appeals that determination. Hollingsworth claims that because one of the state administrative hearings lacked adequate notice, the HHS regulations required the Secretary not to reimburse Zion Grove. We disagree.

## I.

Prior to 1972, the Department of Health, Education and Welfare, now HHS, reimbursed hospitals and other health care facilities for the cost of providing service to Medicare, Medicaid and other federal beneficiaries. The amounts which were reimbursed included the costs attributable to building and equipping those facilities. Congress became concerned, however, that

automatically reimbursing all health facilities for their capital expenditures might undermine the comprehensive plans for health facilities which many states had developed. H.R.Rep.No. 92–231, 92d Cong., 2d Sess., *reprinted in* [1972] U.S.Code Cong. & Ad.News 4989, 5065–66. To assure that the federal assistance provided for those capital expenditures was consistent with the state plans, Congress enacted section 1320a–1 of the Social Security Act. *See* 42 U.S.C. § 1320a–1 (1976). This section provides that interested states may enter into an agreement with HHS whereby the state determines whether a proposed facility is necessary.

The agreement, which incorporates standards and procedures developed by HHS, must require that the proponent of the expenditure apply to the state planning agency at least 60 days before incurring any expenses. See 42 C.F.R. § 100.101 *et seq.* (1980). The state agency must, within a limited time, determine the need for the facility. If the proponent of the facility requests a review of the state agency's initial determination, the state is required to provide a "fair hearing" and to give notice of the hearing in a local newspaper. *See* 42 C.F.R. § 100.106 (1980). The result of the hearing is then transmitted to HHS. If the hearing officer does not issue an opinion within 45 days of the hearing, his failure to act is treated as a decision that the proposed expenditure is necessary and should be reimbursed. *See id.*

HHS has a limited role. Its regulations require it to exclude reimbursement for capital expenditures if the state has recommended that reimbursement be excluded or if HHS finds that the proponent of the facility failed to give the state agency 60 days notice. *See* 42 C.F.R. § 100.108 (1980).

## II.

When reimbursement for Zion Grove's proposed nursing home was initially rejected by the state agency, Zion Grove requested a hearing to review the agency's findings. The hearing was scheduled and notice was published. The notice, however, contained the wrong date. The notice stated that the hearing would be held on June 21, 1977; the hearing actually began on June 17 and ended on June 20, 1977.

After reviewing the agency's findings, the hearing officer did not issue an opinion. Under section 100.106(c)(3), his failure to issue an opinion constituted a determination that the facility was necessary. *See* 42 C.F.R. § 100.106(c)(3) (1980). Because HHS found that Zion Grove gave the requisite 60-day notice and that the state ultimately decided that Zion Grove should be reimbursed, HHS determined not to exclude reimbursement. *See* 42 C.F.R. § 100.108(a) (1980).

Hollingsworth sued to prevent HHS from reimbursing Zion Grove on the ground that the state hearing officer had failed to give adequate notice. He asserts that had he been afforded an opportunity to be heard, he could have shown Mediplex's services made Zion Grove unnecessary. The district court initially dismissed Hollingsworth's suit. It found that section 1320a–1(f) precluded judicial review of the Secretary's determination and, alternatively, that Hollingsworth lacked standing to sue. This court reversed. *See Hollingsworth v. Harris,* 608 F.2d 1026 (5th Cir. 1979) (per curiam). We found that although judicial review was generally barred by section 1320a–1(f), the court retained jurisdiction to determine whether the Secretary followed his own regulations. *See id.* at 1027. With respect to standing, we found that the increased competition which would result from the presence of another nursing home provided sufficient injury-in-fact to permit Hollingsworth to sue. Since the regulations specified that notice of the hearing be given to interested parties, Hollingsworth fell within the zone of interests protected by the regulation. *See id.* at 1028. The case was remanded to the district court "for the sole purpose of determining whether the Secretary observed his own procedures in passing on [Zion Grove's] application under § 1320a–1."

On remand the district court found that the notice was defective but still held that

the Secretary had followed his regulations. The court reasoned that the Secretary had made the limited determinations required by the regulations and that the Secretary was not required to "police the notice that was given of the fair hearing to insure that it was adequate . . . ."

### III.

■ Hollingsworth claims that HHS has failed to insure that public notice was properly made as required by 42 C.F.R. § 100.-106(c)(2). Section 100.106(c)(2), however, does not require HHS to review the notice given in each case. It requires only that HHS include in its contract with a state a provision whereby the state agrees to give notice. Hollingsworth does not contend that HHS violated this regulation by failing to include such a provision.

■ Section 100.108(a) is the only regulation establishing the scope of HHS review of state determinations. That section requires HHS to exclude reimbursement for capital expenditures if the proponent of the expenditure failed to give 60 days notice before incurring any expenses or if the state, after such notice, determined that the expenditure was unnecessary and so notified the proponent. It is undisputed that Zion Grove gave sufficient notice and that the state hearing officer's failure to issue a decision within 45 days constituted a determination that the project was necessary. Section 100.108(a) does not require HHS to review the state's procedures leading to a determination to reimburse. In short, HHS complied with all of its regulations.

■ Hollingsworth claims alternatively that the limited review outlined in the regulations is inconsistent with the statute. We disagree. The regulations establishing limited review are verbatim rescripts of the language of the statute. Section 1320a–1(d)(1) states that the Secretary is required to exclude payment if (1) the proponent failed to give 60 days notice or (2) the state agency, after receiving such notice, determined that reimbursement should be excluded and so notified the proponent. In this case, the Secretary cannot be faulted for promulgating regulations which track the language of the statute.

The Secretary's limited review is consistent with other provisions of section 1320a–1, which give greater protection to the proponent of a facility. Congress only required that the proponent of a facility be given the right to protest the state agency's initial determination. *See* 42 U.S.C. § 1320a–1(d)(1)(B)(ii)(II); *Wilmington United Neighborhoods v. HEW*, 615 F.2d 112, 121 (3d Cir.), *cert. denied,* 449 U.S. 827, 101 S.Ct. 90, 66 L.Ed.2d 30 (1980). Thus, if the state agency erroneously determines that a facility should be reimbursed for its capital expenditures, an opponent of that facility would be unable to request a state hearing officer to review the agency's decision. Congress also gave the Secretary a limited power to override the state's substantive determination that reimbursement was unnecessary. *See* 42 U.S.C. § 1320a–1(d)(2). Congress did not provide the Secretary, however, with a corresponding power to deny reimbursement for substantive reasons when the state recommends otherwise.

While Congress was concerned with only funding necessary health facilities, it was also concerned with developing a streamlined procedure that would avoid delaying construction of needed facilities. *See Wilmington United Neighborhoods v. HEW*, 615 F.2d at 121–22. Congress accommodated these two divergent goals by granting protection to the proponents of health facilities which it denied others. In other words, to streamline the procedure, Congress chose to err on the side of overfunding. The regulations issued by HHS are consistent with this accommodation.

Hollingsworth attempts to find support for his position in a statement made in *NAACP v. Wilmington Medical Center, Inc.,* 436 F.Supp. 1194, 1198 (D.Del.1977), and restated in two Third Circuit cases. *See Wilmington United Neighborhoods v. HEW, supra* at 118; *NAACP v. Medical Center, Inc.,* 584 F.2d 619, 628 (3d Cir. 1978). The district court stated that "[i]f the application has received complete approval when

it reaches the Secretary, he then performs the ministerial act of assuring that *the proper procedure* has been followed." *NAACP v. Wilmington Medical Center, Inc.*, 436 F.Supp. at 1198 (D.Del.1977) (emphasis added) (footnote omitted).

■ Hollingsworth claims that the statement shows that HHS had a duty to determine whether the state had followed the proper procedures even when the state approves reimbursement. The support the statement appears to give to Hollingsworth vanishes, however, on closer inspection. Because the question of whether proper procedures had been followed was not at issue in any of the cases, the procedures which the courts were referring to were never defined. Moreover, an examination of the district court's opinion, which was the source of the statement, reveals that the only inquiry specifically contemplated was whether the proponent of the facility, not the state, had followed proper procedures by filing at least 60 days before incurring any expenses. *See NAACP v. Wilmington Medical Center, Inc.*, 436 F.Supp. at 1198 n.14. Thus the only explanation of "the proper procedure" language supports the regulations adopted by HHS rather than the argument advanced by Hollingsworth.[1]

We note finally that HHS is not powerless in the face of procedural defaults by the state, such as this one. HHS could seek to enforce its contract with the state in a particular situation or it could, as HHS has indicated is its practice, evaluate the state's performance in light of a number of cases when HHS and the state renew their agreement. The decision to pursue these corrective devices, however, is the Secretary's. His failure or refusal to follow such optional courses does not equate with a failure to follow regulations.

AFFIRMED.

---

1. Hollingsworth raises two additional arguments in his supplemental brief. He claims that because Zion Grove failed to incur any expenses by February 4, 1979, Zion Grove's right to be reimbursed lapsed. Because Hollingsworth did not present this claim to the district court, he is precluded from raising it on appeal. *See Noritake Co. v. M/V Hellenic Champion*, 627 F.2d 724, 732 (5th Cir. 1980).

   Hollingsworth also contends that the hearing officer's failure to issue an opinion cannot supersede a determination by the state agency since section 100.106(c)(4) has been interpreted by HHS to require a positive determination by the hearing officer reversing or revising the agency's determination. *See* 42 C.F.R. § 100.-106(c)(4) (1980). The regulation cited by Hollingsworth concerns the findings required when a hearing officer issues an opinion; it does not apply to a hearing officer's failure to issue an opinion. *See* 42 C.F.R. § 100.106(c)(3) (1980). The requirement of a positive determination has no relevance to a situation in which the hearing officer issues no determination at all.

