**HUMANA HOSPITAL CORP., INC.,**
Plaintiff-Appellant,

v.

**Ronald BLANKENBAKER, as Commissioner of the Indiana State Board of Health, and Indiana State Board of Health, Defendants-Appellees.**

No. 83–1830.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 1, 1983.

Decided May 24, 1984.*

Frank P. Doheny, Jr., Woodward, Hobson & Fulton, Louisville, Ky., for plaintiff-appellant.

Michael Schaefer, Asst. Atty. Gen. of Indiana, Indianapolis, Ind., for defendant-appellee.

* This opinion has been circulated among all the judges of this court in regular active service. No judge favored a rehearing in banc on the question of federal court review of state agency recommendations under 42 U.S.C. § 1320a–1.

Before WOOD and CUDAHY, Circuit Judges, and KELLEHER, Senior District Judge.**

HARLINGTON WOOD, Jr., Circuit Judge.

Humana Hospital Corporation brings this appeal from the district court's dismissal of its complaint for lack of jurisdiction due to failure to exhaust administrative remedies. Humana seeks judicial review of a state agency decision, affirmed by a state hearing officer, to recommend to the Secretary of Health and Human Services (HHS) that she deny Humana's application for federal reimbursement of its capital expenses for construction of a new hospital. We affirm the district court.

### I.  Statutory Framework

Section 1122 of the Social Security Act, as amended in 1972,[1] provides the statutory authority under which the Secretary of HHS[2] may exclude the costs of a medical facility's capital expenditures from the facility's rates that are reimbursed under the federal Medicare and Medicaid programs. The congressional goal of this section is twofold: to limit federal reimbursements for health care capital expenditures to those that are necessary, thereby discouraging duplicative projects that increase the costs of medical care; and to encourage rational health care planning under the control of state and local agencies. *See Wilmington United Neighborhoods v. HEW*, 615 F.2d 112, 119–20 (3d Cir.), *cert. denied*, 449 U.S. 827, 101 S.Ct. 90, 66 L.Ed.2d 30 (1980) (citing H.R.Rep. No. 231, 92d Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Ad.News 4989, 5065–66).

The Secretary of HHS may enter into a "1122 agreement" with a state under which a state "designated planning agency" (DPA) is authorized to make findings and recommendations to the Secretary regarding proposed health care capital expenditures. 42 U.S.C. § 1320a–1(b)(1). Under such an agreement, a proponent of a health care capital expansion project must submit its proposal to the DPA for review. The DPA must make findings and recommend to the Secretary approval or disapproval of the project for reimbursement. If the DPA recommends approval, the Secretary is obliged to follow that positive recommendation. *See id.* at § 1320a–1(d). If, however, the DPA recommends disapproval of the project, the proponent is entitled to appeal the negative recommendation in a "fair hearing" before a state-appointed hearing officer under procedures established and maintained by the DPA. *Id.* at § 1320a–1(b)(3). The regulations promulgated under this section in 1973, 42 C.F.R. Part 100 (1983), provide that the findings and recommendations of a hearing officer supersede those of the DPA. 42 C.F.R. § 100.-106(c)(4). Thus, a hearing officer's decision reversing the DPA's adverse recommendation again would require the Secretary to approve reimbursement.

The Secretary may disapprove reimbursement for a project only if: (1) the proponent failed to notify the DPA of its proposal at least sixty days prior to its obligation for expenditures, 42 U.S.C. § 1320a–1(d)(1)(A); 42 C.F.R. § 100.-108(a)(1); or (2) the DPA has notified the proponent that the expenditure does not conform with the standards, criteria, or plans developed by the DPA, and has granted the proponent an opportunity for a fair hearing, 42 U.S.C. § 1320a–1(d)(1)(B); 42 C.F.R. § 100.108(a)(2). However, even if the Secretary could disapprove reimbursement under section 1320a–1(d)(1), the Secretary may conclude that exclusion of these capital expenditures would discourage the operation or expansion of an efficient facility or would be otherwise inconsistent with the effective organization and delivery of health care. Upon so concluding, the Secretary shall not exclude such

---

** The Honorable Robert J. Kelleher, Senior District Judge of the Central District of California, is sitting by designation.

1.  42 U.S.C. § 1320a–1 (1976 & Supp. IV 1980), as amended on Sept. 3, 1982, by Pub.L. No. 97–248, Title I, § 137(a)(5), 96 Stat. 376 (1982), 42 U.S.C.A. § 1320a–1 (West Supp.1975–82).

2.  The Secretary of Health and Human Services presently is Margaret M. Heckler.

expenses. 42 U.S.C. § 1320a–1(d)(2); 42 C.F.R. § 100.108(b). Thus, the Secretary must follow the positive recommendation of the DPA or hearing officer unless the proponent made an untimely application; but the Secretary may disregard a negative recommendation if certain procedures were not followed or if the Secretary determines on the merits that denial of reimbursements would be harmful to health care delivery. Any person dissatisfied with the Secretary's determination may request reconsideration by the Secretary. 42 U.S.C. § 1320a–1(f); 42 C.F.R. § 100.108(d).

## II. Humana's Dilemma

On September 30, 1981, Humana filed an application with the designated planning agency named in Indiana's 1122 agreement with HHS, the Indiana State Board of Health (Board), proposing to construct a 150-bed hospital in Indianapolis. The Board asked twice for additional information, which Humana provided, and deemed Humana's application complete for its review on December 23, 1981. Dr. Blankenbaker, Board commissioner, notified Humana on February 21, 1982, that the Board would recommend against inclusion of Humana's proposed capital expenses in the reimbursed rates. Humana sought a fair hearing to appeal the Board's action. The hearing officer affirmed the recommendation of the Board, notifying Humana of its decision on April 9, 1983.

Humana filed this lawsuit in the Southern District of Indiana two days later, charging Dr. Blankenbaker and the Board with violations of section 1122, the regulations promulgated thereunder, federal and Indiana administrative law, and due process, for alleged procedural and substantive failures by the Board and in the fair hearing.[3] Humana sought declaratory and injunctive relief to prevent the Board from forwarding its negative recommendation to the Secretary of HHS. When considering Humana's request for a preliminary injunction, Judge Dillin advanced to the merits and held that he lacked jurisdiction to review the state agency actions due to Humana's failure to exhaust its administrative remedies before the Secretary of HHS. *Humana Hospital Corp. v. Blankenbaker*, 83 C 516 (S.D.Ind. April 28, 1983). Humana herein appeals Judge Dillin's decision.

Although the statute contemplates four possible stages of agency action (the DPA recommendation, the hearing officer's action, the Secretary's initial determination, and the Secretary's final determination after reconsideration), section 1122 speaks only to judicial review of the Secretary's determination. "A determination by the Secretary under this section shall not be subject to administrative or judicial review." 42 U.S.C. § 1320a–1(f). The regulations, while following the statutory language expressly proscribing judicial review of the Secretary's determination, 42 C.F.R. § 100.108(e), suggest that courts may review the decisions of hearing officers. "[W]here judicial review of such decision[s] is obtained, the final decision of the reviewing court, to the extent that it modifies the findings and recommendations of the designated planning agency, shall to such extent

---

**3.** Humana's seven count complaint raised the following issues: (1) The DPA did not establish and disseminate procedures, approved by the Secretary, for administering the 1122 program and for appeals from adverse findings and recommendations of the DPA, in violation of federal regulations, 42 C.F.R. §§ 100.106(a)(1) & .106(c), and the agreement between the state and HHS. (2) The DPA based its decision on extra-record information and on factors other than valid criteria in violation of Indiana and federal administrative law. (3) The DPA's adverse decision was erroneous because Humana's application conformed with applicable standards, plans, and review criteria under federal law. (4) Only Dr. Blankenbaker and not the entire Board passed on Humana's application, and thus the DPA made no recommendation under § 1122. (5) The DPA did not give Humana notice of its negative recommendation prior to the date Humana planned to incur capital expenses, as required by 42 C.F.R. § 100.-106(a)(4). (6) The hearing officer conducting the statutory fair hearing was appointed by the Board, rather than by the governor, contrary to the DPA Manual prepared by HHS' predecessor, HEW, in March 1974 (excerpted at Plaintiff-Appellant's App. A–44). (7) The hearing officer's decision was arbitrary, capricious, an abuse of discretion, and not supported by substantial evidence, in violation of federal administrative law and § 1122.

supersede the findings and recommendations of the designated planning agency." *Id.* at .106(c)(4). Further, the regulations provide that reconsideration by the Secretary will be based upon the record of the proceedings, which includes the record of any judicial proceedings. *Id.* at .108(d)(2).

The Board and Dr. Blankenbaker argue that a court may not review administrative action at any stage of the 1122 process short of the Secretary's final determination, because administrative remedies remain available and because the court's decision would be subject to review by a federal agency, an unconstitutional result. Yet, as Humana aptly points out, denial of judicial review prior to the Secretary's final determination could leave the courthouse doors forever closed to Humana, due to the clear statutory prohibition against judicial review of the Secretary's determination.

### III. Exhaustion of Administrative Remedies

■ Humana argues that the Eighth Circuit's recent case, *First Federal Savings and Loan Association of Lincoln v. Casari,* 667 F.2d 734 (8th Cir.), *cert. denied,* 458 U.S. 1106, 102 S.Ct. 3484, 73 L.Ed.2d 1367 (1982), involves facts "indistinguishable" from the case at hand and is precedent for allowing federal court review at this stage of the administrative process. We note preliminarily that both federal and state courts have been called upon to review administrative actions under section 1122 and the regulations and agreements thereunder, on complaints brought by both proponents of disapproved projects and opponents of approved projects. A consistent path of judicial review has yet to emerge.

In *Casari,* the plaintiff, titleholder of a defunct nursing home, proposed to reopen the facility but was met with an adverse recommendation from the state DPA and affirmance of that decision by the fair hearing officer. Shortly after the plaintiff filed suit in federal court, the Secretary of HHS accepted the DPA's recommendation and decided to exclude the nursing home capital expenditures from reimbursement. The plaintiff sought review of only the state agency proceedings, although the relief granted by the Eighth Circuit, enjoining transmission of the negative recommendation to the Secretary, would impact ultimately on the Secretary's determination.

As in the instant action, the plaintiff in *Casari* asserted that the DPA lacked authority to act on the plaintiff's application for failure to establish and disseminate procedures for administering its 1122 agreement. Finding this a procedural rather than a substantive challenge to DPA action,[4] the Eighth Circuit agreed with the plaintiff that judicial review was appropriate.[5] The court determined that the section 1122(f) clear prohibition of judicial review of the Secretary's determination should not preclude judicial review of the procedural aspects of intermediate state DPA action. 667 F.2d at 740. The court relied on cases holding that procedural review of agency action is available even when judicial review is withdrawn, *id.* at 739–40, and noted that the statutory withdrawal of judicial review of the Secretary's determination exposed the "glaring absence" of a similar withdrawal of judicial review of intermediate administrative decisions while the HHS regulations clearly assumed that judicial review of hearing officer decisions would occur. *Id.* at 740.[6]

---

**4.** The Third Circuit has rejected the procedural/substantive distinction. *See Wilmington United Neighborhoods v. HEW,* 615 F.2d 112, 118 (3d Cir.), *cert. denied,* 449 U.S. 827, 101 S.Ct. 90, 66 L.Ed.2d 30 (1980) (there is no support in the statute or its legislative history for a procedural/substantive distinction concerning the propriety of judicial review of the Secretary's determinations under § 1122).

**5.** The Eighth Circuit expressed no opinion on whether substantive judicial review of DPA deci-

sions is available under § 1122. *Casari,* 667 F.2d at 740 n. 15.

**6.** Upon review of the DPA procedures, *Casari* held that under § 1122, in conjunction with the Nebraska Administrative Procedures Act, the DPA's failure to promulgate regulations left the agency without authority to make a recommendation to the Secretary. 667 F.2d at 741. The Eighth Circuit affirmed an injunction to stop the DPA from forwarding a negative recommendation to the Secretary, but, finding the DPA

*Casari* did not touch upon the issues of exhaustion of administrative remedies and separation of powers. We therefore decline to follow *Casari*, and embark on our own evaluation of "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967).

Courts are well-advised to refrain from interfering in the administrative process until administrative remedies are exhausted. The agency, here the Secretary of HHS, yet may reach a decision satisfactory to Humana, eclipsing the need for judicial review. First, upon receiving a negative recommendation from the state, the Secretary may decide to approve Humana's application on the merits as consistent with the efficient delivery of health care services. 42 U.S.C. § 1320a–1(d)(2). Even if the Secretary decides to exclude Humana's project from reimbursement, Humana may request that the Secretary reconsider her initial determination, and Humana then may be able to persuade the Secretary to change her mind.

Further, the issues may ripen under subsequent administrative action. The Secretary may eliminate or consolidate some of Humana's concerns, crystalizing the issues for judicial review. For example, the Secretary, when considering the DPA's nega-

tive recommendation, may compare the procedures followed at the state level with those envisioned in section 1122(d)(1)(B). This subsection expressly mentions certain procedures that the DPA should have followed in reaching its negative recommendation.[7] Conceivably the Secretary could recognize the procedural failures alleged by Humana and refuse to follow the recommendation or send the matter back to the DPA for correction.

Further administrative action prior to judicial review will provide the opportunity for resolution or at least refinement of the issues without unnecessary expenditure of judicial resources. *See* K. Davis, Administrative Law Treatise § 26:1 (2d ed. 1983). We hold that the federal courts lack jurisdiction to review the state agency action at this juncture.[8]

Denial of judicial review at this stage of the administrative proceedings will avoid a potential constitutional conflict between the branches of government. The regulations seem to contemplate judicial review of the hearing officer's decision, with the record of judicial proceedings forming part of the record before the Secretary for her review. The Supreme Court consistently has held from its earliest days that no decision of a federal court may be reviewed by the legislative branch; Congress has no judicial power save the power of impeach-

---

equally powerless to submit a positive recommendation, reversed the district court's direction to the DPA to recommend approval of the plaintiff's capital expenditures. *Id.*

7. Section 1122(d)(1)(B) provides in relevant part:

(1) Except as provided in paragraph (2), if the Secretary determines that—* * *
(B)(i) the planning agency so designated ... had received such timely notice of the intention to make such capital expenditure and had, within a reasonable period after receiving such notice and prior to obligation for such expenditure, notified the person proposing such expenditure that the expenditure would not be in conformity with the standards, criteria, or plans developed by such agency ... for adequate health care facilities in such State ..., and (ii) the planning agency so designated had, prior to submitting to the

Secretary the findings referred to in subsection (b) of this section—* * *
(II) granted to the person proposing such capital expenditure an opportunity for a fair hearing with respect to such findings; then, ... he shall ... not include [in the rate reimbursement] any amount which is attributable to ... expenses related to such capital expenditure....

42 U.S.C. § 1320a–1(d)(1)(B).

8. This Circuit did affirm, without opinion, the Northern District of Indiana when it took federal question jurisdiction to review a DPA's negative recommendation of a plaintiff's project for failure to act within a "reasonable time" as required by § 1122. The district court did not analyze the propriety of federal court jurisdiction at that stage of the administrative process. *See Lakeside Mercy Hospital, Inc. v. Indiana State Board of Health*, 421 F.Supp. 193 (N.D. Ind.), *aff'd*, 547 F.2d 1170 (7th Cir.1976).

ment. *See Hayburn's Case*, 2 U.S. (2 Dall.) 408, 410–13 n. (a), 1 L.Ed. 436 (1792), *cited in* J. Nowak, R. Rotunda, & J.N. Young, *Constitutional Law* 75 (2d ed. 1983); *see also Chicago & Southern Air Lines, Inc. v. Waterman Steamship Corp.*, 333 U.S. 103, 113–14, 68 S.Ct. 431, 437, 92 L.Ed. 568 (1948).[9] If judicial review were to proceed at this stage, the Secretary would be bound by the court holding, a result not contemplated by the statute and clearly contrary to the regulations.[10]

### IV. Judicial Review of Secretary's Determination

■ Humana argues that withholding judicial consideration until after exhaustion of its administrative remedies may serve to deny Humana any judicial review, because defendants may assert section 1122(f) as a bar to judicial review of the Secretary's final determination. We do not intend to abandon Humana with no recourse to the courts. We leave the door open to Humana to seek federal judicial review after exhaustion of its administrative remedies, should it find the Secretary's final determination unsatisfactory.

Under Article III, Congress controls the jurisdiction of the federal courts, and may act to withdraw the courts' jurisdiction over certain types of cases. The Administrative Procedure Act provides that judicial review over administrative agency action is unavailable only where the matter is clearly committed to agency discretion, or where Congress has succeeded in eliminating all judicial review of the subject matter. 5 U.S.C. § 701(a) (1976). The Supreme Court has held that judicial review will not be cut off "unless there is a persuasive reason to believe that such was the purpose of Congress." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140, 87 S.Ct. 1507, 1510, 18 L.Ed.2d 681 (1967); *see* K. Davis, Administrative Law Treatise § 28.09 (1982 Supp.).

Congress has not convinced us that it intended to eliminate any and all judicial review of the 1122 process. The regulations suggest judicial review of state agency actions, yet we cannot approve judicial review, whether procedural or substantive, of intermediate administrative actions for compliance with section 1122. Review of the Secretary's determination would be the only other opportunity to challenge the administrative process. We do not believe that Congress intended to cut off that opportunity.[11]

---

**9.** We recognize that the § 1122 program involves a unique blend of state and federal administrative agency action. Some state courts have found jurisdiction to review § 1122 actions upon exhaustion of state administrative remedies and prior to any federal agency action. *See, e.g., North Miami General Hospital, Inc. v. Office of Community Medical Facilities, Department of Health and Rehabilitative Services,* 355 So.2d 1272 (Fla.App.1978); *Martin County Nursing Center, Inc. v. Medco Centers, Inc.,* 441 N.E.2d 964 (Ind.App.1982); *Citizens General Hospital of New Kensington, Pennsylvania v. Commonwealth Department of Health,* 59 Pa. Commw. 549, 430 A.2d 393 (1981). State courts may have jurisdiction to review state agency compliance with state administrative procedures applicable in their 1122 agreements. *Cf. Sierra Club v. Indiana-Kentucky Electric Corp.,* 716 F.2d 1145 (7th Cir.1983) (state court invalidation of Clean Air Act (CAA) state implementation plan on state law procedural grounds precludes enforcement of plan, although approved by EPA); *Citizens for a Better Environment v. EPA,* 649 F.2d 522, 525–26 (7th Cir.1981) (state court invalidation of CAA rules promulgated by state agency without authority under state law prevents both EPA approval of rules and federal court review of EPA "approval"). State court review of the state agency's compliance with the federal law of § 1122, however, might bind the Secretary as it would bind a federal court under the full faith and credit clause.

**10.** Because the regulations suggest rather than require judicial review of state hearing officer decisions, we need not strike the regulations as unconstitutional or unlawful. We hold merely that the provisions accommodating possible judicial review must be ignored.

**11.** The Third Circuit has disagreed, at least where review of the Secretary's decision to *approve* reimbursement was sought. *See Wilmington United Neighborhoods v. HEW,* 615 F.2d 112, 118–19 (3d Cir.), *cert. denied,* 449 U.S. 827, 101 S.Ct. 90, 66 L.Ed.2d 30 (1980). The Third Circuit held that a federal court had no jurisdiction of a suit brought by community residents opposing relocation of a hospital, approved by the Secretary upon the state's DPA's positive recommendation. The court noted that the Secretary has merely ministerial duties over a DPA's positive recommendation. *Id.* at 118.

The Third Circuit has approved judicial review of this project in other contexts. It af-

The Fifth Circuit has approved procedural review of the Secretary's determinations, at least to the extent of assessing whether the Secretary conformed with her agency's own rules and regulations. *See Hollingsworth v. Harris,* 608 F.2d 1026, 1027 (5th Cir.1979) (per curiam). *Hollingsworth* noted that despite Congress' attempted withdrawal of judicial review, agency action may be reviewed for compliance with the agency's own procedures as outlined in its regulations. *Id.* (citing *Graham v. Caston,* 568 F.2d 1092, 1097 (5th Cir.1978)). In *Casari,* the Eighth Circuit cited *Hollingsworth* with approval. 667 F.2d at 740. We hold that at a minimum, judicial review of the Secretary's compliance with the procedures of section 1122 and the regulations thereunder[12] is available despite section 1122(f).

### V. Conclusion

We affirm the district court's dismissal of Humana's complaint for lack of jurisdiction due to failure to exhaust administrative remedies. In the event that Humana's concerns are not resolved in the administrative process, we hold that upon exhaustion of its administrative remedies Humana may turn to the federal courts for review of the Secretary's final determination.

firmed a district court ruling that the proposed relocation evidenced no discriminatory purpose or effect. *NAACP v. Medical Center, Inc.,* 657 F.2d 1322 (3d Cir.1981). The court had dismissed HEW as a defendant when remanding for trial on the alleged discrimination, so the agency approval was not under review. *See NAACP v. Medical Center, Inc.,* 599 F.2d 1247, 1250 n. 10, 1259 n. 49 (3d Cir.1979). The Third Circuit also held that the Secretary's role in following the state DPA's approval recommendation was minimal federal involvement, insufficient to necessitate an environmental impact statement. *NAACP v. Medical Center, Inc.,* 584 F.2d 619 (3d Cir.1978).

12. A close reading of § 1122(d)(1), *see supra* note 7, suggests that not only must the Secretary conform her actions to certain procedural requirements, but the state DPA's and hearing officer's actions must conform with the procedures mentioned in subsection (d)(1)(B). This subsection could be used as a means for the Secretary to investigate the state agency's compliance with the mentioned procedures. We do not think that such an investigation would so overburden the Secretary and HHS as to defeat the statutory purposes of streamlining implementation of approved health care projects and leaving control over health care planning in state and local hands. We think it better to encourage resolution of any questions concerning state agency compliance with § 1122 at the federal administrative level rather than in the courts.

In contrast, the Fifth Circuit has held that the Secretary is not required to police the state agency's actions for compliance with required procedures. *See Hollingsworth v. Schweiker,* 664 F.2d 526, 529 (5th Cir.1981), *on appeal from remand in Hollingsworth v. Harris,* 608 F.2d 1026 (5th Cir.1979). The Secretary must include in each 1122 agreement a provision whereby the state agrees to implement certain procedures in its administration of the 1122 program. If the state misapplies these procedures, the Fifth Circuit held that HHS could seek to enforce its contract with the state in a particular situation, or could bring up the matter upon negotiation of contract renewal; but the DPA's procedural irregularities alone would not make the Secretary's determination vulnerable to attack. *Id.* at 530. Insofar as the procedures in question are *state* administrative procedures, state court review may be appropriate. *See supra* note 9.