416 So.2d 1279 (1982)
LIFEMARK CORPORATION
v.
Roger GUISSINGER, Secretary, Department of Health and Human Resources, State of Louisiana, and Murray Forman, Director, Division of Health Planning and Development Department of Health and Human Resources, State of Louisiana.
QUALICARE INC.
v.
DEPARTMENT OF HEALTH AND HUMAN RESOURCES, STATE OF LOUISIANA, et al.
Nos. 82-C-1366, 82-C-1376.
Supreme Court of Louisiana.
June 15, 1982.
Stewart E. Niles, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for relator.
Fritz Windhorst, Gretna, James A. Cobb, Jr., Stephen M. Sullivan, Emmett, Cobb, Waits & Kessenich, New Orleans, Joseph A. Donchess, Baton Rouge, Dorothy J. Kyle, Lafayette, for respondent and applicant.
Leon H. Rittenberg, Jr., Kenneth F. Sills, Polack, Rosenberg, Rittenberg & Edom, Stewart E. Niles, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Dengre, New Orleans, for respondents.
MARCUS, Justice.
Pursuant to Section 1122 of the Social Security Act, 42 U.S.C. § 1320a-1, the Secretary *1280 of the U. S. Department of Health and Human Services (DHHS) entered into a written agreement with the State of Louisiana, acting through the Division of Health, Planning and Development (DHPD) under which DHPD was named as the state designated planning agency (DPA). Section 1122 is a program designed to curb unnecessary capital expenditures by hospitals and other health care facilities. Health care providers are required to secure advance approval from state designated planning agencies for capital expenditures in order to be reimbursed with federal funds. Moreover, the Section 1122 review is designed to be a streamlined procedure and thus avoid delaying the construction of needed facilities.
Five health care providers, including Lifemark Corporation, Qualicare Inc. and National Medical Enterprises, Inc. (NME) made separate applications to DPA for advance approval of a hospital to be constructed in Slidell, Louisiana. In accordance with Section 1122 guidelines, DPA sent the applications to the local health systems agency, which, after performing an initial review of each application, recommended to DPA that the Lifemark application be approved and that the Qualicare and NME applications, as well as the others, be disapproved.[1] However, upon further review, DPA approved the application of NME and disapproved the others. Notice of its findings and recommendations were sent to each applicant, the Secretary of the U.S. Department of Health and Human Services (DHHS) as well as to other specified agencies.
Thereafter, Lifemark and Qualicare filed separate lawsuits in the state district court, each challenging the certificate of approval issued by DPA to NME and their respective notifications of disapproval. After a hearing in the Lifemark case, the trial judge rendered judgment in favor of Lifemark and ordered that the certificate of approval issued to NME be recalled and vacated and that DPA notify the Secretary of DHHS of said order and request that the certificate of approval be returned. It was further ordered that a hearing of Lifemark's appeal be commenced within thirty days and that the record and all conclusions of the hearing officer be forwarded to court within sixty days of said hearing. Subsequently, NME, who had not been made a party defendant, filed a petition to intervene as an indispensable party. Its right to intervene was denied. On the same day, the trial judge signed a stay order in the Qualicare suit which, in effect, granted Qualicare the same relief previously granted to Lifemark. On NME's application in the Lifemark suit, the court of appeal granted a writ of mandamus vacating and recalling the judgment of the district court and ordering that NME be joined as a party defendant.[2] Several days later, another panel of the same court of appeal denied NME's application for writs in the Qualicare case.[3] We granted Lifemark's application in the Lifemark case and NME's application in the Qualicare case, consolidated the cases for an expedited hearing, and ordered the stay orders issued by the trial judge in these cases recalled and vacated including notification to the Secretary of DHHS to return the certificate of approval issued to NME. All proceedings were stayed pending further orders of this court.[4]
The threshold issues presented for our review are whether plaintiffs (Lifemark and Qualicare) are entitled to oppose the certificate of approval issued to NME and whether plaintiffs are entitled to judicial review of their respective notifications of disapproval prior to the exhaustion of their administrative remedies. We think not on each issue.
*1281 Under Section 1122 of the Social Security Act, Congress only required participating states to establish procedures by which adverse decisions of the DPA may be appealed by proponents of capital expenditures. The implementing federal regulations provide in pertinent part:
The request for a hearing must be made in writing, to the designated planning agency, within 30 days after the date on which the person proposing the capital expenditure receives notice of an adverse finding or recommendation of the designated planning agency. (Emphasis added.)
42 C.F.R. § 100.106(c)(1). The law does not require the establishment of such appeal procedures for opponents of proposals that have been approved and Louisiana has established none. 42 U.S.C. § 1320a-1(d)(1)(B)(ii)(II); Hollingsworth v. Schweiker, 664 F.2d 526 (5th Cir. 1981); Wilmington United Neighborhoods v. HEW, 615 F.2d 112 (3d Cir.), cert. denied, 449 U.S. 827, 101 S.Ct. 90, 66 L.Ed.2d 30 (1980). We consider the omission of such a procedure significant. As previously indicated, the Section 1122 review process is designed to be a streamlined procedure to avoid delays in the construction of needed facilities.[5] Providing a proponent whose capital expenditure has been disapproved a hearing does not conflict with this clear objective for streamlined proceedings because there has already been a finding that the proposed capital expenditure is unnecessary. On the other hand, providing a hearing to opponents of a proposed capital expenditure would make this objective unreachable for any number of opponents could seek a hearing on any number of grounds with the result that a capital expenditure found to be necessary could be delayed indefinitely. See Wilmington United Neighborhoods v. HEW, supra. Since federal law does not contemplate a procedure for the opponents of proposals that have been approved and Louisiana has not established one, we must conclude that plaintiffs are not entitled to oppose the certificate of approval issued to NME. Therefore, the trial judge erred in recalling and vacating the certificate of approval issued by DPA to NME.
The procedure for appeal in the case of an "adverse finding or recommendation" of the designated planning agency (DPA) is set forth in the federal regulations.[6] Generally, *1282 it provides that a dissatisfied proponent who wishes to appeal may request a hearing before a hearing officer, whose decision, to the extent that it reverses or revises the findings or recommendations of the DPA, supersedes those findings or recommendations.[7] We do not consider that the scheme contemplates judicial review until such time as the hearing officer has rendered a decision. Plaintiffs, who concede that their lawsuits were filed prior to commencement of the hearings, attempt to rest their right for judicial review on the Administrative Procedure Act, La.R.S. 49:964(A), which provides that a preliminary, procedural or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy and would inflict irreparable injury. Even assuming for the sake of argument that the Administrative Procedure Act applies to the Section 1122 process, we do not agree that La.R.S. 49:964(A) applies in the instant case.[8] We consider that the regulations set forth a streamlined procedure for administrative review which affords plaintiffs an adequate remedy from the issuance of the negative recommendations. Moreover, we do not consider that any irreparable injury will result from waiting until a "final decision or order" is rendered in the "adjudication proceeding." Hence, we conclude that plaintiffs are not entitled to judicial review of their respective notifications of disapproval prior to the exhaustion of their administrative remedies. Therefore, the trial judge erred in ordering that the appeals be commenced and thereafter the recommendations and all conclusions of the hearing officer be forwarded to court.
In accordance with our conclusions that plaintiffs are not entitled to oppose the certificate of approval issued to NME and that plaintiffs are not entitled to judicial review of their respective notifications of disapproval prior to the exhaustion of their administrative remedies, we must order that plaintiffs' suits be dismissed at their respective costs and that all judgments and orders previously rendered in these cases be vacated and set aside.

DECREE
It is ordered that plaintiffs' suits be dismissed at their respective costs and that all judgments and orders previously rendered in these cases be vacated and set aside.
CALOGERO, J., recused.
LEMMON, J., concurs and assigns reasons.
LEMMON, Justice, concurring.
The federal regulations at issue in these proceedings do not expressly authorize disapproved parties to obtain a stay of action by the Secretary on the DPA's approval of a competing party's proposal until the disapproved parties obtain judicial review.[1] If the federal regulations are to be interpreted as contemplating that the DPA's recommendation should not be acted upon by the Secretary until the competing disapproved parties are afforded judicial review, then the federal courts should make that interpretation of Congressional intent.[2]
Arguably, if the state court ultimately has jurisdiction to review the DPA's disapproval of competing proposals after completion of administrative procedures, then the *1283 state court has jurisdiction to issue needful writs in aid of that jurisdiction in order to prevent the question from becoming moot. However, since the Louisiana Legislature has not required comparative hearings (and the disapproved parties did not request comparative hearings prior to the decision of the DPA), and since neither Congress nor the Legislature has provided for a delay in the DPA's notice of its recommendation to the Secretary until judicial review is afforded to competing disapproved parties, the state courts should not read between the lines and interpret the federal regulations so as to afford that right to the disapproved parties. The Congress clearly intended a streamlined procedure, and the state court should not frustrate that clear intention by inferential interpretation of the federal regulations.
NOTES
[1] The federal regulations for the implementation of Section 1122 are found in 42 C.F.R. § 100:101, et seq. The Louisiana rules, promulgated in accordance with the federal regulations are found at 6 La.Register 601.
[2] (La.App. 1st Cir. 1982).
[3] (La.App. 1st Cir. 1982).
[4] 414 So.2d 1247 (La.1982).
[5] For example, the DPA is required to complete its review of an application within sixty to ninety days of receiving it and, if the DPA fails to render its decision within the allotted time, the application is deemed approved for Section 1122 purposes. 42 C.F.R. § 100.106(a)(4).
[6] 42 C.F.R. § 100.106(c) provides in pertinent part:

(1) The request for a hearing must be made in writing, to the designated planning agency, within 30 days after the date on which the person proposing the capital expenditure receives notice of an adverse finding or recommendation of the designated planning agency.
(2) The hearing shall be commenced within 30 days after receipt of the request described in paragraph (c)(1) of this section (or later, at the option of the person requesting the hearing), and shall be conducted in accordance with the applicable requirements of State law and by such agency or person, other than the designated planning agency, as the Governor (or other chief executive officer of the State) may designate for that purpose: Provided, That no agency which or person who has taken part in any prior consideration of or action upon the proposed capital expenditure may conduct such hearing....
(3) As soon as practicable, but not more than 45 days after the conclusion of a hearing, the hearing officer shall notify the person who requested the hearing, the designated planning agency, the other agencies described in § 100.105 who participated in the hearing, and other interested parties at the discretion of the hearing officer, of his decision and the reasons therefor....
(4) Any decision of a hearing officer, arrived at in accordance with this paragraph, shall, to the extent that it reverses or revises the findings or recommendations of the designated planning agency, supersede the findings and recommendations of the designated planning agency: Provided, That where judicial review of such decision is obtained, the final decision of the reviewing court, to the extent that it modifies the findings and recommendations of the designated planning agency, shall to such extent supersede the findings and recommendations of the designated planning agency.
(5) To the extent that any decision of a hearing officer pursuant to this paragraph requires that the designated planning agency take further action, such action shall be completed by such date as the hearing officer may specify. Failure by the designated planning agency to complete such action by such date shall have the effect of a finding that the proposed capital expenditure is in conformity with the standards, criteria, and plans described in § 100.104(a)(2).
[7] See 6 La.Register 607.
[8] We expressly decline to address at this time the issue of the applicability of the Administrative Procedure Act to the Section 1122 process.
[1] Indeed, the federal regulations apparently do not contemplate a situation involving competing proposals.
[2] While the federal court will not review the state proceedings, the federal court can stay the Secretary's action on the DPA's recommendation until there is a state judicial review of the proceedings, if the federal court believes that such action was contemplated by Congress.