464 So.2d 7 (1984)
PSYCHIATRIC INSTITUTES OF AMERICA, INC.
v.
Roger GUISSINGER, et al.
No. 83 CA 1342.
Court of Appeal of Louisiana, First Circuit.
December 28, 1984.
Rehearing Denied February 21, 1985.
Writs Denied April 19, 1985.
*8 Fritz Windhorst, Gretna, for Psychiatric Institutes of America, Inc.
Joseph A. Donchess, Baton Rouge, for Roger Guissinger, Secretary, Dept. of Health & Human Resources, Murray Forman, Director, Division of Health Planning & Development.
Kenneth F. Sills, New Orleans, for Dorsey W. Dysart.
Before EDWARDS, SHORTESS and SAVOIE, JJ.
SHORTESS, Judge.
Psychiatric Institutes of America, Inc. (PIA) brought suit against Roger Guissinger, Secretary, Department of Health and *9 Human Resources (DHHR), et al., seeking injunctive relief to restrain defendants from in any way acting upon a certificate of need issued on September 6, 1983, to Greenbriar Neuropsychiatric Hospital (Greenbriar). A modified temporary restraining order was signed by the trial court.[1] A hearing was set on PIA's request for preliminary injunction. A motion to dissolve the temporary restraining order was filed by Guissinger and DHHR. The defendant Greenbriar and its owner Dorsey W. Dysart filed exceptions, including an exception of no right of action. Basing his decision on Lifemark Corporation v. Guissinger, 416 So.2d 1279 (La.1982), the trial judge found that opponents or competitors (such as PIA) had no right of judicial review in state court and granted the exception of no right of action, dismissing PIA's suit. PIA has appealed.
In 1972, the U.S. Congress amended the Social Security Act in an attempt to curtail spiraling costs of health care in the United States. That amendment, in 42 U.S.C. § 1320a-1, is commonly known as Section 1122. It provides a procedure by which the Secretary of the Department of Health and Human Services (DHHS) in Washington, D.C., is empowered to enter into agreements with states, whereby the United States agrees under certain conditions to reimburse the costs of certain capital expenditures to persons who build or add to medical facilities. The Secretary of DHHS entered into a written agreement with the State of Louisiana, acting through the Division of Health, Planning and Development (DHPD), under which DHPD was named as the State-designated planning agency (DPA), to handle Section 1122 applications in Louisiana.
The purpose of Section 1122 is to ensure that Federal monies appropriated under Medicare/Medicaid are not used to support unnecessary capital costs made on behalf of health care facilities. It was designed to curb unnecessary capital expenditures by hospitals and other health care facilities by requiring health care providers to secure advance approval from a DPA for capital expenditures in order to be reimbursed with Federal funds. Hence, Louisiana's DPA administers the Section 1122 review process pursuant to the Federal statutory and regulatory requirements. The Louisiana DPA's decision is the conclusive authority as to whether a proponent of a health-care facility is entitled to reimbursement. A rejected proponent can request a "fair hearing" by an independent State hearing officer under Louisiana's established procedure for review of agency decisions. The hearing officer's final decision supercedes the DPA's decision, becoming for purposes of Section 1122, the DPA's determination. This review is designed to be a streamlined procedure to avoid delaying construction of needed facilities.
PIA was notified in December, 1982, that its application under Section 1122 for reimbursement of its proposed Slidell Psychiatric Institute was approved and was issued a certificate of need by DHHR.
On January 14, 1983, DHHR disapproved an application which had been submitted November 16, 1982, for a competing facility by St. Tammany psychiatrist Dorsey W. Dysart, for his proposed Greenbriar Neuropsychiatric Hospital. On February 11, 1983, Dysart exercised his right to a "fair hearing" under 42 C.F.R. § 100.106 on May 16, 1983, and secured from the administrative hearing officer an order requiring DHHR to take further action. On July 7, 1983, DHHR again reached an adverse determination on the Greenbriar application. Dysart brought a second appeal before the same hearing officer, who again reversed the DHHR decision, and ordered a certificate of need to be issued. That certificate was issued on September 6, 1983, and is now pending before the Secretary of DHHS. PIA timely appealed within thirty days after issuance of the certificate.
PIA has not challenged the regulatory structure used by the Louisiana DPA but instead alleges the following three failures *10 by the DPA and the hearing officer to follow their own procedures:
1. Public notice by publication in local newspapers is required at each critical stage in the Section 1122 review mechanism: upon receipt of a completed application; upon a determination of that application; and, in the event of an appeal, upon the scheduling of the date and time of the appeal. In the Greenbriar review, however, public notice was given only onceafter receipt of the completed application on November 30, 1982. PIA alleges that this failure denied competitors, other interested persons, and the public adequate notice necessary to a "fair" determination within the meaning of Section 1122. PIA alleges that those due process procedures require that interested parties be apprised of the hearings to enable them to participate in consideration of a proposed application. Under the regulations, access to public hearings provides interested persons their only opportunity to participate in the review process.
2. PIA further alleges that there was failure to comply with procedural time limits requiring finalizing the hearing officer's decision within six months of the date of the original request for a fair hearing.
3. PIA alleges that Dysart was granted two hearings (where one was permitted by regulations) by the same hearing officer contrary to federal regulations prohibiting participation by any agency or person "who has taken part in any prior consideration of or action upon the proposed capital expenditure." 42 C.F.R. § 100.106(C)(2). PIA argues, therefore, that DHHR's original rejection of the Greenbriar facility is the correct final Section 1122 review decision.
Our inquiry concerns a narrow procedural issue. Does PIA, an opponent which has already received a certificate of need, have standing in District Court to challenge procedural due process defects in Greenbriar's application review after administrative remedies have been exhausted?

JUDICIAL REVIEW
Effective August 20, 1982, the Louisiana Office of Licensing and Regulation, DHHR, implemented policies and guidelines for Section 1122 Capital Expenditure Review in accordance with 42 C.F.R. § 100.106(a)(1). Section 1122 requires states to:
(3) establish and maintain procedures pursuant to which a person proposing any such capital expenditure may appeal a recommendation by the designated agency and will be granted an opportunity for a fair hearing by such agency or person other than the designated agency as the Governor (or other chief executive officer) may designate to hold such hearings. 42 U.S.C. § 1320a-1(b)(3).
Subsection (f) further provides:
Any person dissatisfied with a determination by the Secretary under this section may within six months following notification of such determination request the Secretary to reconsider such determination. A determination by the Secretary under this section shall not be subject to administrative or judicial review.
42 U.S.C. § 1320a-1(f).
Louisiana adopted an appeal procedure for rejected proponents of applications:
D. Appeal Procedures.
In the case of a negative finding, a fair hearing will be offered to the applicant to determine whether the proposed expenditure is consistent with the standards, criteria and plans specified in the applicable statutes. The correctness, completeness, adequacy or appropriateness of the standards, criteria, and plans against which the proposed expenditure was measured are not appealable, although the question of DHPD's adherence to its procedures as outlined in the federal regulations and State Health Plan and these policies may be considered.
Louisiana Register, Vol. 8, No. 8, p. 415 (August 20, 1982). (Department of Health and Human Resources Rule).
Appeal procedure for opponents, whether other unsuccessful applicants or facilities with their own certificates of need, are omitted. Even a rejected proponent has *11 appeal rights which are limited to the question of DHPD's adherence to its procedures.
The Louisiana Supreme Court has interpreted these rules to mean that disapproved applicants are not entitled to judicial review prior to the exhaustion of their administrative remedies, which occurs when the hearing officer has rendered a decision. Lifemark, 416 So.2d at 1280, 1282. By this definition in this case all administrative remedies have been exhausted. Thus judicial review for proponents now exists. However, Lifemark also points out that Congress only required an appeal procedure for proponents, not opponents of applications and Louisiana failed to implement one. The Supreme Court considered that omission significant in view of Congressional intent to provide a streamlined procedure to avoid delaying construction of needed facilities. Since a proponent has already been rejected, there is no construction delay if he is given a hearing. However, providing opponents a hearing would permit indefinite delay. Lifemark, 416 So.2d at 1281.
In this case, the plaintiff questions his denial of access to discussions of need when regulations, if properly followed, require public hearings guaranteeing equal time to those in favor of and those opposed to an application. Louisiana Register, Vol. 8 at 414, § B.4 (August 20, 1982). It is not clear from Lifemark whether this plaintiff, denied earlier access and now precluded from judicial review, should be given no opportunity at all to express his opposition. We interpret Lifemark to hold that the law does not require the establishment of such appeal procedures for opponents of proposals that have been validly approved. Thus, where the approval is invalid, judicial review is available in state court[2] on that narrow procedural issue: whether the DPA and hearing officer followed their own procedures.
It is well settled in Louisiana that the right of judicial review of administrative proceedings is presumed to exist. It has been held that such review is necessary to the validity of administrative proceedings under our legal system and traditions. The traditional scope of review of administrative agencies in the performance of a discretionary duty is restricted to a determination of whether the agency's action can be deemed to have been unreasonable, arbitrary or capricious, or whether it amounted to an abuse of power. La. Const. art. I, § 22; Delta Bank and Trust Company v. Lassiter, 383 So.2d 330, 335 (La.1980); Griffin v. City of Baton Rouge, 444 So.2d 186, 187 (La.App.1st Cir.1983); Henning v. Carrier, 430 So.2d 1310, 1315 (La.App. 1st Cir.1983), writ denied, 435 So.2d 429 (La.1983).

STANDING
The United States Fifth Circuit Court of Appeals held that although judicial review was generally barred for opponents of applications under Section 1122 even for an erroneous agency decision, the "court retained jurisdiction to determine whether the Secretary followed his own regulations." In addition, quoting Hollingsworth v. Harris, 608 F.2d 1026 (5th Cir.1979) (per curiam), the Court found that Hollingsworth, an opponent who himself had a valid certificate of need, met the two-pronged *12 test for standing. Increased competition which would result from the presence of another nursing home provided sufficient injury-in-fact. And, as with PIA, "Since the regulations specified that notice of the hearing be given to interested parties, Hollingsworth fell within the zone of interests protected by the regulation." Hollingsworth v. Schweiker, 664 F.2d 526, 528 (5th Cir.1982). Additionally, we note that had PIA participated initially in the review process in public hearings, the purpose of the act might have been further promoted, especially if PIA helped prove the Greenbriar facility to be an unnecessary expenditure as DHHR did twice before.
We find both Hollingsworth decisions parallel the standing issue in this case. The Hollingsworth decision on standing supports the spirit and requirements of the Section 1122 review process. 42 C.F.R. § 100.106 provides that the agreement between the DHHS and the DPA "shall provide for the following notification and review procedures:"
(c)(2)(i) The hearing shall be open to the public and shall be publicized through local newspapers and public information channels.
(c)(2)(ii) The person proposing the capital expenditure, the other agencies described in § 100.105, and other interested parties, including representatives of consumers of health services, shall be permitted to give testimony and present arguments at the hearing.
(Emphasis ours.)

CONCLUSION
Since PIA's petition sets forth several allegations of failure of DHHR to follow its own procedures, it does have standing to sue. The decision of the trial court is reversed, and this matter is remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed equally to Greenbriar and DHHR as permitted by law.
REVERSED AND REMANDED.
NOTES
[1] It never went into effect because PIA did not furnish bond.
[2] In Wilmington United Neighborhoods v. HEW, 615 F.2d 112, 125-127 (3rd Cir.1980), cert. denied, 449 U.S. 827, 101 S.Ct. 90, 66 L.Ed.2d 30 (1980), Judge Adams, concurring in part and dissenting in part, agreed with the holding that HEW lacked discretionary power to override the DPA once it has approved a proposal by proper procedure, thus precluding judicial review in federal courts. However, he felt that the U.S. House of Representatives Committee report's expression of intent not to change the autonomy or authority of existing state or local planning agencies meant the federal government was not attempting to preempt the field of health planning or to abolish state efforts. He also said that the standards, criteria, or plans used by DPAs for project evaluation were to be congruent with those statutorily established in previous legislation. Since Congress mandated a state process, then "review by state courts would be consistent with the purposes of § 1122, whereas review by federal courts would not."