CRAIN, Judge,
concurring.
GRANTING THE 1122 CERTIFICATES
Lifemark v. Guissinger, 416 So.2d 1279 (La.1982) considered and answered two questions. First, can opponents of an 1122 certificate recipient judicially oppose the issuance of that certificate (supposedly by either appeal or separate court action)? The answer was no. Secondly, can these same opponents, if they have also been denied a certificate, obtain judicial review of that denial without exhausting administrative remedies? The answer was also no.
The second question is not before this court in this case. These parties were denied 1122 certificates in April of 1984 and made no request for judicial review of these denials. However, it appears clear from the administrative procedures established that had they proceeded they would have been entitled to a fair administrative hearing and some form of judicial review if they remained unsuccessful. Bowen v. Doyal, 259 La. 839, 253 So.2d 200 (1971).
The first question is before this court. These parties seek judicial revocation of 1122 certificates granted to other parties who are not even made parties to this proceeding.[1] The Louisiana Supreme Court said this could not be done in Lifemark. An exception to Lifemark was made by this court in Psychiatric Institutes of America, Inc. v. Guissinger, 464 So.2d 7 (La.App. 1st Cir.1984), writs denied, 467 So.2d 530, 534 (La.1985) (hereafter PIA). There it was stated that* opponents of an 1122 certificate have judicial access if the approval was invalid, only to question whether the DPA (and the hearing officer if it went that far) followed their own procedures.
The correctness of PIA must be seriously questioned. A careful reading of Life-mark reveals that the Supreme Court specifically considered the question of whether an opponent of an 1122 recipient can question an invalid certificate issued without compliance with procedural rules, and decided they could not. The Supreme Court noted that under 42 C.F.R. § 100.106(a)(4), the DPA has 60 to 90 days to review an application. If DPA does not render its decision within that time period the application is deemed approved for 1122 purposes. Obviously, an application which received approval in this fashion could be invalid, and if so it would have received approval without the DPA following the correct procedures, completion of review within 60 to 90 days. Yet the Supreme Court noted that in this situation no judicial access would be available to opponents. Thus, in this case if DPA had simply done nothing the 1122 applicants would have received approval and these opponents would have no judicial remedy. A distinction between failure to do and doing incorrectly has no basis.
It appears obvious that the court in Life-mark considered the federal legislation and Louisiana’s implementation thereof and decided that access to the court in 1122 cases is statutorily limited to applicants. Some concern is expressed that this violates La. Const. Art. 1, Sec. 22 which provides:
All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights.
However, the Louisiana Supreme Court has recognized that, “This provision, like the fourteenth amendment to the United States Constitution, protects fundamental interest *719 to a greater extent than interests that are not considered of fundamental constitutional importance.” Everett v. Goldman, 359 So.2d 1256, 1268 (La.1978). “Fundamental rights include such rights as free speech, voting, interstate travel and other fundamental liberties.” Everett, 359 So.2d 1266. Certainly the right to prohibit someone else from receiving certification for reimbursement of social security funds does not fall within those interests considered of fundamental constitutional importance. Mere economic competitive interests has never been raised to this classification. Consequently, where the right asserted is not entitled to special constitutional protection “access to the courts may be restricted if there is a rational basis for that restriction.” Everett, 359 So.2d 1268. The rational basis as stated by the court in Life-mark, is “a streamlined procedure to avoid delays in the construction of needed facili-ties_ (Providing a hearing to opponents of a proposed capital expenditure would make this objective unreachable for any number of opponents could seek a hearing on any number of grounds with the result that a capital expenditure found to be necessary would be delayed indefinitely.” Lifemark Corp., 416 So.2d 1281.
Even if PIA has any validity it is not available to these plaintiffs. The requirements of PIA are invalid approval and then judicial access only to determine if correct procedures were followed. An invalid approval using correct procedures furnishes no judicial relief. We are all assuming here (because no evidence was taken) that the approvals were invalid in that the recipients could not show need according to the established criteria. However, opponents have not cited one instance where DPA violated its procedures in dealing with the recipients of 1122 certificates. To the point where approval was granted the procedures had been followed and at that point it would have been procedurally correct for the applicants to have been granted 1122 certificates if they met the criteria. Consequently, the PIA requirements are not present.
THE MORATORIUM
a) Standing
The other question involved in this case is the moratorium. In attacking the moratorium plaintiffs’ procedural posture is not the same as with the opposition to the 1122 recipients. Although their petition is entitled “Petition for Judicial Review under the Administrative Procedure Act” which would connote an appeal from an administrative ruling, that is not their posture. They apparently have filed applications themselves for 1122 certificates but have not pursued them. They have not been denied certificates because of the moratorium. Consequently, they are not appealing a denial of 1122 certificates because of the moratorium. They are, in effect, persons (or entities considered to be persons by legal definition) attacking what they allege to be an illegal, ultra vires act by the Governor. Consequently, they must meet the same criteria for standing to make such attack as any other citizen. As such, plaintiffs likely have judicial access because of a real and actual interest in the performance of DHHR with reference to 1122 applications which is distinct from the interest of the public at large. Presumably, their inability to obtain a certificate for expansion because of the alleged unlawful act of the Governor affects their peculiar economic interests sufficiently to sustain their right to question the moratorium. Bussie v. Long, 286 So.2d 689 (La.App. 1st Cir.1973), writ refused, 288 So.2d 354 (La.1974). The right to question the moratorium is entirely separate and distinct from the right to oppose the certification of the 1122 applicants, and the two actions cannot be lumped together. The question of the ability of the Governor to legally suspend the 1122 program is not in any way connected to the question of plaintiffs’ standing to judicially question the granting of the 1122 certificates. Plaintiffs have standing to question the moratorium, but the power of the Governor to institute the same must be considered alone, without consideration to *720 who has or has not been granted a certificate prior to the moratorium.
b) Cause of Action
We have to go no further than the manner in which the 1122 program was established to determine the ability of the Governor to impose the moratorium. The 1122 program is a procedure for health care providers to obtain reimbursement from the federal government for the services they furnish to persons entitled to federal benefits such as medicare and medicaid. It is established by 42 U.S.C., Sec. 1320a-l et seq. The state has to be willing to enter into the agreement. If it is willing to do so the federal secretary enters into the 1122 agreement with the state. In Louisiana this agreement is entered into by the Governor through DHHR. There is no statute enacted by the Louisiana Legislature which mandates the state to enter into the agreement, nor is there any statute which mandates the state remain in the agreement. Nor is there any such federal requirement. In fact the state, under terms of the agreement, can unilaterally terminate it on 30 day notice in writing to the Secretary. That which it is the perogative of the Governor to enter into, it must surely be the perogative of the Governor to withdraw from. If the Governor can withdraw from the agreement, he can certainly suspend it. The appropriate party to complain of a suspension of the agreement would be the federal secretary since the agreement does not provide for suspension. We have no evidence that the Secretary has registered any complaint.
It is argued that somehow the Governor must comply with the Louisiana Administrative Procedure Act to suspend the program. If the LAPA applies to agency review of applications under the 1122 program, (and it is not necessary for us to decide that question) it certainly does not apply to the suspension of the entire program. The action of the Governor is neither an adjudication nor rule making. It is the elimination, at least for a limited period of time, of a program which is not statutorily mandated. If a Governor cannot do this then the Governor’s office is captive to its own agencies. It is one matter to require agencies (and the Governor) to administer programs according to railes which assure fair treatment. It is quite another to attempt to use the rules to keep the program itself in existence. With respect to the moratorium even though the plaintiffs have a right of action, they have no cause of action.
I do not believe the plaintiffs have standing to question the granting of the 1122 certificates. I am of the opinion the plaintiffs can judicially question the Governor’s right to impose a moratorium, but that he has that power.
I concur in the result for these reasons.

. It appears that under our holding in National Medical Enterprises, Inc. v. Guissinger, 432 So.2d 367 (La.App. 1st Cir.1983) even if we held there is a right and cause of action, the most we could do is remand for the parties who were granted 1122 certificates to be made party defendants.