637 So.2d 429 (1994)
GREENBRIAR NURSING HOME, INC., Guest House of Slidell, Inc., Forrest Manor, Inc., Lacombe Nursing Home Inc., and Pontchartrain Guest House Inc.
v.
Christopher PILLEY, His Capacity as Secretary of the Louisiana State Department of Health and Hospitals.
No. 93-CC-2059.
Supreme Court of Louisiana.
May 23, 1994.
*430 James A. Cobb, Jr., John Francis Emmett, Emmett, Cobb, Waits & Kessenich, New Orleans, for applicant.
Jerry L. Phillips, Philip B. Waters, Baton Rouge, for respondent.
LEMMON, Justice.[*]
This action involves the interpretation of Section 1122 of the Social Security Act, 42 U.S.C. § 1320a-1 (Supp.1975), which authorized federal reimbursement of capital expenditures made by or on behalf of a health care facility after a designated state agency approves the necessity of the facility. Competing health care facilities filed this action to require (by mandatory injunction) the Louisiana State Department of Health and Hospitals (DHH) to recall and vacate the certificate of need on Project No. 3057 issued pursuant to Section 1122. The issue at this stage of the proceeding is whether the court of appeal properly sustained an exception of no right of action when the opponents of the recipient of the certificate protested DHH's noncompliance, in issuing the certificate of need, with its own procedural rules and regulations promulgated pursuant to Section 1122.

I
Prior to 1972, the United States Department of Health, Education and Welfare (now the Department of Health and Human Services *431 (DHHS)) reimbursed hospitals and other health care facilities for the cost of providing service to Medicare, Medicaid and other federal beneficiaries. The reimbursements included the costs attributable to building and equipping those facilities. When the costs of health care began to spiral, Congress became concerned that automatic reimbursement of all health facilities for their capital expenditures might undermine the comprehensive plans for health facilities which many states had developed. Hollingsworth v. Schweiker, 664 F.2d 526 (5th Cir.1981).
In 1972, Congress enacted 42 U.S.C. § 1320a-1 (Supp.1975) to allow interested states to enter into an agreement with DHHS whereby the state would determine whether a proposed facility is necessary. Psychiatric Institutes of America, Inc. v. Guissinger, 464 So.2d 7 (La.App. 1st Cir. 1984), cert. denied, 467 So.2d 530 (La.1985). The purpose of the act, commonly known as Section 1122,[1] was to assure that federal reimbursements for health care capital expenditures were limited to those that were necessary, thereby discouraging duplicative projects that increase the costs of medical care and encouraging rational health care planning under the control of state and local agencies. Humana Hosp. Corp v. Blankenbaker, 734 F.2d 328 (7th Cir.1984); Wilmington United Neighborhoods v. United States Dept. of Health, Education and Welfare, 615 F.2d 112 (3d Cir.), cert. denied, 449 U.S. 827, 101 S.Ct. 90, 66 L.Ed.2d 30 (1980).
Pursuant to Section 1122 and the regulations promulgated thereunder, 42 C.F.R. §§ 100.101-100.109 (1989), Congress authorized the Secretary of DHHS to enter into an agreement with individual states, under which the state was to review all proposed health care capital expenditures reimbursable by federal funds and to determine whether the expenditures conformed with local standards, criteria or plans developed to meet the need for adequate health care facilities in the state.[2] 42 U.S.C. § 1320a-1(b) (1988); First Fed. Sav. and Loan Ass'n of Lincoln v. Casari, 667 F.2d 734 (8th Cir.), cert. denied, 458 U.S. 1106, 102 S.Ct. 3484, 73 L.Ed.2d 1367 (1982).
In each cooperating state, a designated planning agency (DPA) was to be established to review each capital expenditure proposed by a health care facility, and the DPA was to make findings and recommendations to the Secretary as to approval or disapproval of the project.[3] 42 U.S.C. § 1320a-1(b)(1) (1988). If the DPA recommends approval, the Secretary is required to follow that positive recommendation, unless the Secretary finds the proponent had failed to give the required notice to the state agency before incurring expenses. 42 U.S.C. § 1320a-1(d) (1988); 42 C.F.R. § 100.108(a)(1) (1989).
Adverse findings and recommendations by the DPA can be appealed by the proponent in a "fair hearing" before a state-appointed hearing officer under procedures established and maintained by the DPA. 42 U.S.C. § 1320a-1(b)(3) (1988). The findings and recommendations of the hearing officer supercede those of the DPA, but a favorable ruling from the hearing officer also has to be approved by the Secretary of DHHS. 42 C.F.R. § 100.106(c)(4) (1988).
When the DPA notifies the Secretary that a proposed capital expenditure does not conform to local standards, the Secretary may exclude those expenditures from federal health care reimbursements to the facility. 42 U.S.C. § 1320a-1(d)(1) (1988). However, the Secretary of DHHS can decide, despite a notice of nonconformity, to include these capital expenditures for federal reimbursement where sufficient proof of capability to provide *432 efficient, effective and economical delivery of health care is demonstrated. 42 U.S.C. § 1320a-1(d)(2) (1988). The Secretary's final determination is not subject to administrative or judicial review.[4] 42 U.S.C. § 1320a-1(f) (1988).

II
Pursuant to Section 1122, the Secretary of DHHS entered into a written agreement with the Louisiana State Department of Health and Hospitals, through the Division of Health, Planning and Development, under which that state agency was named as the state designated planning agency (DPA). Louisiana's DPA thereafter set forth state policies and guidelines for Section 1122 capital expenditure review which were published in the state register. The policies and guidelines pertinent to this case became effective in November, 1983. 9 La. Register 757 (1983).
In January, 1984, Mississippi Extended Care Centers, Inc. (MECCI), d/b/a Slidell Heritage House, submitted an application to the DPA requesting approval under Section 1122 of a 200-bed nursing home facility.[5] In this application, MECCI specified a certain tract of land near the Rigolets in Slidell as the proposed site for location of the facility and identified the service area for the facility as St. Tammany and Orleans parishes.[6]
While reviewing the application, the DPA issued staff comments which noted a state health plan goal of ninety-five percent annual occupancy for nursing homes within a particular service area. At the time of MECCI's application, the occupancy rate of nursing homes located in the combined Orleans and St. Tammany Parishes area slightly exceeded that standard. However, the occupancy rate for nursing homes in St. Tammany only was far below ninety-five percent, thus indicating that a service area consisting of St. Tammany Parish alone would not meet the standard stated by the DPA.
After review of the application, the DPA in March of 1984 issued to MECCI a notification of conformity with their standards, criteria and plans for the Slidell Heritage House project. The DPA recommended to the Secretary of DHHS that amounts attributable to capital expenditures for this project be included under Section 1122 in payments to MECCI for services furnished. The DPA also issued a certificate of need to MECCI for the construction of Slidell Heritage House.
In March, 1984, pursuant to a request from MECCI, the DPA changed the name of the owner of the certificate of need to Louisiana Extended Care Centers, Inc. (LECCI). In February, 1985, LECCI requested that the name of the project be changed to St. Tammany Heritage House.
At the time of the approval of Project No. 3057, the DPA required the successful applicant to submit evidence of a binding obligation to make a capital expenditure within one year of the approval. After the approval, the DPA amended its policies to require evidence from holders of certificates of need that vertical construction had begun within one year of the date of approval, and the DPA requested such evidence from LECCI. In February, 1986, over one year after the new policy had been in effect, the DPA had not received such evidence from LECCI and notified LECCI that its certificate of need had expired. More than two years later, LECCI's attorney requested reinstatement of the certificate, arguing that the vertical construction requirement did not apply to the St. Tammany project because the rule was adopted after approval of the application. In April, 1988, the DPA, without any other action or explanation, reinstated the certificate.
*433 In November, 1989, LECCI notified the DPA that the nursing home would be built on a site in Mandeville, which was not the site designated in the application for the certificate. In December, 1989, the DPA acknowledged receipt of this correspondence. The DPA did not conduct any other review of the project or publish any notice of the request to change the proposed location.
Plaintiffs, who are the operators of all of the nursing homes in St. Tammany Parish and are themselves holders of Section 1122 certificates of need, eventually learned of the planned site change and requested that the DPA immediately recall and vacate the certificate of need issued to LECCI and notify DHHS not to reimburse LECCI for capital expenditures for the project. When they did not receive a response from the DPA, plaintiffs filed a petition for declaratory judgment and injunctive relief against the Secretary of DHH, asserting the following causes of action:
FIRST CAUSE OF ACTION
. . . .
Under policies and guidelines existing at the time of the submission of this application, a change in site required review by the designated planning agency in order to determine whether there was a continuing need for the facility on the new site selected. The defendant has failed to carry out that additional review as required by its own guidelines and regulations. If the project is reviewed at its new proposed location, it is not approvable under present guidelines or under the guidelines existing in 1984 at the time of the original application. This is due to the fact that Orleans Parish may no longer be included in the proposed service area for the facility since it is located more than ten miles from Orleans Parish. Facilities located in St. Tammany, including those facilities managed by the plaintiffs, do not have the requisite occupancy rates to permit approval of an additional nursing home in St. Tammany Parish.
. . . .
SECOND CAUSE OF ACTION
Under regulations promulgated in 1984 and 1985, the Designated Planning Agency required that evidence of vertical construction be submitted within one year of the approval of the application. To this date, the applicant has never submitted any evidence of vertical construction notwithstanding the fact that seven years have elapsed from the initial approval. The entire purpose of the § 1122 program, ... was to afford a streamlined mechanism for approving and constructing needed health care facilities. That entire purpose will be frustrated if an applicant such as this one is permitted to hold his Certificate for over seven years before commencing construction of the facility.
. . . .
THIRD CAUSE OF ACTION
... [P]laintiffs will suffer great and immediate irreparable harm not compensable in damages in the face of reduced occupancy caused by a competitor facility. The existence of the competitor will reduce the revenues of the plaintiff, thus having a deleterious effect on the ability of the plaintiffs to continue to deliver quality health care to the patients within their facilities.
FOURTH CAUSE OF ACTION
The Certificate of Need issued to the defendant facility contemplated under the existing rules and regulations that it be constructed in Slidell, Louisiana on the parcel of land identified in the application. Plaintiff's request as an alternative remedy that if the Certificate is not recalled and vacated that the defendants be required to build the facility at its original location near Slidell, Louisiana. (emphasis added).
Plaintiffs prayed that the court issue a permanent injunction, ordering the DPA to recall and vacate the certificate of need issued for the project and to notify the DHHS not to reimburse capital expenditures for the project. Plaintiffs also requested a mandatory injunction, compelling defendant in accordance with its policies and guidelines to review *434 the entire project de novo, including the proposed site change, and to recall the certificate of need because of the failure to submit evidence of vertical construction. Finally, plaintiffs requested that if the court does not recall and vacate the certificate of need, the court should alternatively order construction of the facility on the parcel of land originally identified.[7]
Defendant filed an exception of no right of action, asserting that plaintiffs had no real and actual interest to challenge defendant's issuance of a certificate of need to LECCI or defendant's administration of the remaining certificates of need under former Section 1122.
The district court overruled the exception, stating the following oral reasons:
It would indeed be a hiatus in the law which would be untenable to this court if there was not some oversight of the procedural aspects, procedural due process if you will, for all the parties in a case where there is something as important as building nursing homes with taxpayers' funds in effect through federal grants and so forth. Were it not so the secretary and/or any other persons in charge of making the determinations as well as following the procedures which the legislature has set out for them to follow would have carte blanche to do whatever they wanted to do, and nobody could change, modify, reverse, or in any way correct their actions. That, of course, flies in the teeth of what the law and the courts are all about. So failing anyone else's having the authority to do anything about it, I say that that means that I must have the authority to do it.
The court of appeal reversed the trial court's ruling, rendering a judgment which maintained the exception of no right of action and dismissed plaintiffs' suit.[8] 623 So.2d 94. The court of appeal determined that this court's decision in Lifemark Corp. v. Guissinger, 416 So.2d 1279 (La.1982), absolutely precluded plaintiffs from opposing the granting of a certificate of need to a competitor.[9] Accordingly, the court of appeal held that "plaintiffs have no right to appeal or to judicial review of the award of the certificate of need to Louisiana Extended Care Centers, Inc."
This court granted certiorari to review the correctness of that decision. 629 So.2d 380.

III
The court of appeal, relying on Lifemark, sustained defendant's exception of no right of action. An exception of no right of action questions whether the plaintiff has a real and actual interest that he is asserting. La.Code Civ.Proc. art. 681. The exception is used to raise the question whether the plaintiff belongs to the particular class in whose exclusive favor the law extends the remedy for which a cause of action exists, or to raise the issue whether the plaintiff has the right to invoke the remedy which the law extends only conditionally. Babineaux v. Pernie-Bailey Drilling Co., 261 La. 1080, 262 So.2d 328 (1972), quoting Henry G. McMahon, The Exception of No Cause of Action in Louisiana, 9 Tul.L.Rev. 17, 29-30 (1935).
In the present case the law extends a conditional remedy, to some parties under some circumstances, for a review of the approval by the state DPA of a Section 1122 proposal. The question is whether these plaintiffs under these circumstancesopponents of the proposal who are contesting the *435 DPA's failure to follow its own rules and regulations in considering the proposal have the right to seek judicial review of the approval.
In Lifemark, several health care providers applied to the DPA for advance approval of construction of a hospital in a particular service area. After the DPA approved one health care provider's proposal for the project and disapproved the others, the disapproved applicants filed suit in district court challenging the DPA's issuance of the certificate of approval. This court initially noted that Section 1122 only requires states to establish procedures by which a proponent of capital expenditures may appeal an adverse decision, but does not require establishment of appeal procedures for opponents of proposals that have been approved. Further observing that Louisiana has not established any such procedures, this court considered the omission of such a procedure significant, concluding:
[T]he Section 1122 review process is designed to be a streamlined procedure to avoid delays in the constructions of needed facilities.... [P]roviding a hearing to opponents of a proposed capital expenditure would make this objective unreachable for any number of opponents could seek a hearing on any number of grounds with the result that a capital expenditure found to be necessary could be delayed indefinitely. Since federal law does not contemplate a procedure for the opponents of proposals that have been approved and Louisiana has not established one, we must conclude that plaintiffs are not entitled to oppose the certificate of approval issued to NME. (citations and footnotes omitted).
416 So.2d at 1281. Accordingly, this court dismissed the plaintiffs' action.[10]
The present case is distinguishable from Lifemark, principally on the basis that the opponents of the recipient of the certificate of need in Lifemark sought to appeal a substantive decision of the DPA, whereas plaintiffs in the present case seek review by the courts of the DPA's failure to follow its own published procedural rules and policies in awarding the certificate of need.
The Lifemark decision relied to a great extent on Wilmington United Neighborhoods v. United States Dept. of Health, Education and Welfare, 615 F.2d 112 (3d Cir.), cert. denied, 449 U.S. 827, 101 S.Ct. 90, 66 L.Ed.2d 30 (1980), which also involved an opponent's substantive challenge to DPA approval. However, other federal decisions have allowed procedural challenges to Section 1122 approvals when the state DPA did not follow its own rules and regulations in issuing the approval.
In Hollingsworth v. Harris, 608 F.2d 1026, 1027 (5th Cir.1979), an action by an opponent of an applicant who had received Section 1122 approval by the DPA, the court observed that Section 1122(f) would preclude review of determinations made by the federal Secretary, but held that judicial review is "available where the [state] administrative agency fails to follow procedures outlined in regulations adopted by that administrative agency." The court further held that the opponent had standing to challenge the alleged procedural omissions (lack of public notice of the hearing) because the opponent fell within the "zone of interests" protected by the regulation. Id. at 1028.
In First Fed. Sav. & Loan Ass'n of Lincoln v. Casari, 667 F.2d 734 (8th Cir.), cert. denied, 458 U.S. 1106, 102 S.Ct. 3484, 73 L.Ed.2d 1367 (1982), the proponent sued the directors of the state DPA who had made a finding of nonconformity of the application, alleging that the agency had failed to adopt administrative rules and standards for evaluating health care proposals. The court, citing the Hollingsworth decision with approval, held that "DPA determinations are subject to judicial review regarding issues of procedural propriety...."[11]Id. at 739. The *436 court noted that judicial review of administrative agency decisions is always available to assure agency compliance with internal procedures.
The decision in Humana Hosp. Corp. v. Blankenbaker, 734 F.2d 328 (7th Cir.1984), also involved a proponent's challenge to the state agency's procedural failures. The court held that the federal Secretary's noncompliance with the procedures of Section 1122 was subject to judicial review (although the court noted that federal courts lack jurisdiction to review the state agency action before the federal Secretary acts on the recommendation). See also Psychiatric Institutes of America v. Guissinger, 464 So.2d 7 (La.App. 1st Cir.1984), cert. denied, 467 So.2d 530 (La.1985) (judicial review is available for an opponent of an applicant to challenge the approval of a proposal on procedural grounds; while Lifemark forecloses challenges by an opponent of a proposal which has been validly approved by the DPA, judicial review is available as to the validity of the approval when the DPA allegedly did not follow its own procedures).
This court's decision in Lifemark that prohibiting an opponent's substantive challenge to the DPA's Section 1122 approval of one of several proposals was consistent with Congress' intent for a streamlined procedure to avoid delay in the construction of needed health care facilitiesassumed that the state agency, in determining that the facility was needed, would follow its own procedural rules and regulations which contain numerous safeguards and notice and hearing provisions. When a state DPA sets up a streamlined procedure and follows the rules and regulations of that procedure to determine the need for a facility, an opponent cannot challenge the award of a certificate of need. But if the state DPA does not follow its own procedures adopted pursuant to Section 1122 (as by failing to give public notice of critical stages), then the validity of the approval of the certificate of need cannot be presumed. Indeed, an unscrupulous applicant[12] can avoid a disqualifying occupancy requirement by applying for a certificate in an area which qualifies under the standards and then take advantage of the administrative agency's failings by shifting the location after approval to a non-qualifying area in which an original application would have been disapproved. Such a procedure would fly directly in the face of the Congressional intent not to use federal funds to support unnecessary capital expenditures. 42 U.S.C. § 1320a-1(a) (1988).
Congress' initial purpose in enacting the Section 1122 procedure was to limit the use of federal funds to construction and operation of needed health care facilities. Allowing a procedural challenge to the state DPA's failure to follow its own procedural rules and regulations in determining the need for a facility is consistent with the initial Congressional purpose, yet is not inconsistent with the theory that the state DPA's approval of a Section 1122 application, after a determination in which the DPA followed its own rules and regulations, should not be subject to a judicial challenge by an opponent of the applicant. Moreover, the opponents of the proposal in this case, who claim that they were duped into refraining from contesting the Rigolets location and that the state failed to give notice of the change of location and failed to review that reviewable event, certainly have a real and actual interest in challenging the procedure used, especially if the proper procedure would have resulted in disapproval of a competing facility.
Accordingly, the judgment of the court of appeal which maintained the exception of no right of action is reversed, the exception is overruled, and the case is remanded to the district court for further proceedings.
HALL, J., dissents for reasons assigned.
HALL, Justice, dissenting.
I respectfully dissent because the important issue presented for decision by the present litigation should not be adjudicated without joinder of an indispensable party.
The plaintiff nursing home operators filed a petition for declaratory judgment and injunctive *437 relief naming as defendant the Secretary of the Louisiana State Department of Health and Hospitals. Plaintiffs seek a permanent injunction ordering the Secretary to recall and vacate a certificate of need for a nursing home project issued to Louisiana Extended Care Center, Inc., to notify the United States Department of Health and Human Services not to reimburse capital expenditures for the project, compelling defendant to review the project de novo, and other relief. Although referred to in several instances in the allegations of the petition as a defendant, Louisiana Extended Care Center, Inc. was not named as a defendant or served and cited as such.
The Secretary filed an exception of no right of action which was overruled by the district court, but sustained by the court of appeal. The majority opinion of this court reverses the court of appeal decision, overrules the exception, and remands to the district court for further proceedings, holding that plaintiffs have standing and a real and actual interest in seeking judicial review challenging the procedure used by the DHH in granting the certificate. The decision of this court adjudicates a key and perhaps decisive issue in this litigation in the absence of an indispensable party, the holder of the certificate.
There can be no doubt that Louisiana Extended Care Services, Inc. is an indispensable party to this action. Its interests in the subject matter are so interrelated and would be so directly affected by the judgment that a complete and equitable adjudication of the controversy cannot be made unless it is joined in the action. LSA-C.C.P. art. 641. The Code article provides that "No adjudication of an action can be made unless all indispensable parties are joined therein."
The failure to join an indispensable party to an action may be noticed by the appellate court on its own motion. LSA-C.C.P. art. 645. When such failure is noticed by an appellate court, the court may remand the case for amendment to the petition so as to make the indispensable party a party to the action.
Although the decision of this court overruling the exception of no right of action is not a final adjudication of the controversy, it adjudicates a key, threshold issue that could be determinative of the litigation and, had the judgment of the court of appeal been affirmed, would have finally adjudicated the controversy. This decision should not be made without the joinder of the indispensable party whose interest is most directly affected.
This court should notice the failure to join an indispensable party and remand for amendment of the petition to join that party, after which the standing of plaintiffs to seek judicial review may be fully litigated with all indispensable parties participating.
NOTES
[*] Pursuant to Rule IV, Part 2, § 3, Ortique, J. was not on the panel which heard and decided this case. See footnote in State v. Barras, 615 So.2d 285 (La.1993).
[1] Section 1122 was added as a 1972 amendment to Title XI of the Social Security Act.

The Section 1122 program was terminated after the date of the issuance of the initial certificate on Project No. 3057. Plaintiffs point out in their brief, however, that although the program has been phased out, health care providers are still receiving reimbursement under the Medicare-Medicaid programs, paid over time, and the issues in this case therefore are not moot.
[2] 42 C.F.R. § 100.101-100.109 (1989) provided for the contents of agreements to be entered into by the Secretary with the various states pursuant to Section 1122.
[3] The proponent of the expenditure must apply to the DPA at least sixty days before incurring any expense. 42 C.F.R. § 100.106 (1989).
[4] However, a person dissatisfied with the Secretary's determination can request reconsideration by the Secretary. 42 U.S.C. § 1320a-1(f) (1988); 42 C.F.R. § 100.108(d) (1989).
[5] Apparently no evidence was offered at the trial of the exception of no right of action, and the facts stated in this opinion are taken from the allegations of the petition.
[6] Under the state health plan in force at the time of this application, the service area for a nursing facility was defined as the parish in which the facility was located or proposed to be located, and any other parish or a portion thereof which falls within a ten-mile radius of the location of the facility. As a result of the designated location of this facility in Slidell, Orleans Parish was included in the proposed service area.
[7] Plaintiffs stated at oral argument before this court that although suit was filed before construction began on Heritage House in Mandeville, construction has now been completed and the home is currently operating.
[8] The court of appeal originally granted defendant's application for supervisory writs and peremptorily reversed the trial court's ruling. Because that action appeared to be incorrect, this court granted certiorari and remanded the case to the court of appeal for briefing, argument and opinion. 612 So.2d 69.
[9] The court of appeal followed its own interpretation of Lifemark, as stated in Rapides Gen. Hosp. v. Robinson, 488 So.2d 711 (La.App. 1st Cir.) (en banc), cert. denied, 489 So.2d 1276 (La.1986), that "the court is of the opinion the preclusion set forth by our Supreme Court in Lifemark is an absolute one and exceptions should not be judicially created by this intermediate court."
[10] This court also held in Lifemark that plaintiffs were not entitled to judicial review of the disapproval of their respective applications until they had exhausted their administrative remedies.
[11] The court distinguished Wilmington United Neighborhoods v. United States Dept. of Health, Education and Welfare, 615 F.2d 112 (3d Cir.), cert. denied, 449 U.S. 827, 101 S.Ct. 90, 66 L.Ed.2d 30 (1980), on the basis that the decision in Wilmington regarding the non-reviewability of DPA determinations should be limited to substantive, as opposed to procedural, challenges.
[12] This statement does not suggest that the applicant in this case was unscrupulous, but emphasizes the importance of the DPA's following its own procedures in determining whether a facility is needed.